## CLARKE v BRUNSWICK CORPORATION

### OPINION OF THE COURT

1. ACTION—EQUITY—PROCEDURAL DISTINCTIONS—SUBSTANTIVE DIFFERENCES.

The procedural distinctions between law and equity have been abolished in this state, but the substantive differences remain.

2. CONTRACTS—BREACH OF CONTRACT—DEFENSES—EQUITABLE DEFENSES.

A partial summary judgment in favor of plaintiffs was properly granted in a suit where plaintiffs were claiming money judgments for breach of contract and defendant raised affirmative defenses of estoppel and unclean hands since affirmative defenses must be responsive to the remedy sought and equitable defenses are not available in a law action.

3. LABOR RELATIONS—SEVERANCE PAY—CONTRACTS—INTERPRETATION.

A determination that plaintiff employees were "involuntarily terminated" for purposes of receiving severance pay under the terms of their employment contract was proper where the defendant employer sold the division at which the plaintiffs were employed and the terms of the sale prohibited rehiring of the plaintiffs by the defendant for a period of one year, and the requirement that no "other suitable opening" be available to the employees seeking severance pay was met since another "suitable opening" referred to a vacancy in a comparable position only with the defendant employer and not to openings with any other employer than the defendant.

### DISSENT BY O'HARA, J.

4. LABOR RELATIONS—COURTS.

*It is not the place of the courts to incorporate limitations on employers relating to sale or transfer of location of part of the*

### REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Equity §§ 1–4.
[2] 27 Am Jur 2d, Equity §§ 19, 89.
[3, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 1242, 1245.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1077.
  53 Am Jur 2d, Master and Servant § 2.

*employer's business into the relationship between a business
and its salaried executive employees.*

5. LABOR RELATIONS—SEVERANCE PAY—CONTRACTS—INTERPRETATION.

*An employment contract which provided for severance pay to
salaried employees if their employment was terminated for
reasons outside the control of the employees when no other
suitable opening was available was not breached by a defend-
ant employer who sold his plant to another and suitable
employment wherein all the terms of the former employment
were included was offered to the employees in continued em-
ployment with the purchaser; the employees by refusing to
accept such offered employment voluntarily and automatically
placed themselves beyond the terms of the contract and the
employer should not be held liable for severance pay.*

Appeal from Kalamazoo, Raymond W. Fox, J.
Submitted Division 3 June 6, 1973, at Grand Rap-
ids. (Docket No. 11905.) Decided August 27, 1973.
Leave to appeal denied, 391 Mich —.

Complaint by Roy H. Clarke and others against
Brunswick Corporation to recover severance pay.
Summary judgment for plaintiffs. Defendant ap-
peals. Affirmed.

*Howard & Howard* (by *Richard A. Enslen),* for
plaintiffs.

*Gemrich, Moser, Dombrowski, Bowser & Garvey,*
for defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and
O'HARA,* JJ.

R. B. BURNS, P. J. Plaintiffs were all salaried
employees of the defendant. For several years they
had been employed by the defendant at its Kala-
mazoo division. This division was sold by the de-
fendant to Tartan Industries. The sales agreement

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

prohibited the defendant from employing any of the plaintiffs for one year. Tartan Industries offered all of the plaintiffs employment, but the plaintiffs chose not to become employees of Tartan. Plaintiffs seek severance pay from the defendant.

For several years the defendant had a severance pay policy with a stated purpose:

"The purpose of this procedure is to outline the method for paying a severance allowance to salaried employees who are involuntarily terminated by Brunswick."

Under the definition of terms in said policy, the following language appears:

"Termination for reasons outside the control of the employee—is any separation from the payroll for an indefinite period (more than 30 days) for actions not within the direct control of the employee when no other suitable opening is available."

The trial court granted judgment for plaintiffs. Defendant appeals and we affirm.

Defendant claims the trial court erred in granting plaintiffs' motion for a summary judgment. Defendant asserted affirmative defenses in its answer. It alleged plaintiffs were guilty of wrongdoing, and raised the equitable defenses of estoppel and unclean hands.

The trial court held that equitable defenses were not available in a law action and granted plaintiffs' motion for a summary judgment, thereby striking such defenses.

The procedural distinctions between law and equity have been abolished, but the substantive differences remain. *Barke v Grand Mobile Homes Sales, Inc,* 6 Mich App 386; 149 NW2d 236 (1967). The plaintiffs were claiming money judgments for

breach of contract and the affirmative defenses must be responsive to that remedy. *Kahoun v Metropolitan Life Insurance Co,* 12 Mich App 441; 162 NW2d 922 (1968). The trial judge was correct in granting a partial summary judgment.

The trial judge correctly stated the three reasons involved in the case:

"Three questions appear to be involved in the determination of this litigation. It must first be decided whether or not the severance policy was a contract. If it was a contract, then were the plaintiffs involuntarily terminated? And if they were, was there another 'suitable opening' within the definition of the terms?"

The trial court relying on *Cain v Allen Electric & Equipment Co,* 346 Mich 568; 78 NW2d 296 (1956), held that there was a contract. We agree.

The trial court also held that the plaintiffs were involuntarily terminated when the defendant sold the division to Tartan Industries and were advised that under the terms of the sale plaintiffs could not be rehired by the defendant for a period of one year. We agree.

The trial judge also found that the term "other suitable opening" meant an opening with the defendant corporation. As the trial judge said, "Clearly this language 'suitable opening' was not referring to a vacancy in a comparable position with the Ford Motor Company, Whirlpool Corporation, American Seating Company, or any other employer than Brunswick Corporation". We agree.

We have considered the other claims of error by the defendant but deem it unnecessary to discuss their merit.

Affirmed. Costs to plaintiffs.

FITZGERALD, J., concurred.

O'HARA, J. *(dissenting)*. The able and experienced trial judge and my two esteemed colleagues state the issues as follow:

"Three questions appear to be involved in the determination of this litigation. It must first be decided whether or not the severance policy was a contract. If it was a contract, then were the plaintiffs involuntarily terminated? And if they were, was there another 'suitable opening' within the definition of the terms?".

I am obligated to disagree. The questions of involuntary termination and the availability and definition of "suitable" openings are, in my view, really part of a second major issue. I take the liberty of restating the question on appeal as I conceive it.

1) Was there a contract between plaintiffs and their employer?
2) Assuming there were, was it breached? And if so, by whom?
3) If it were breached did the aggrieved parties prove damages reasonably within the contemplation of the contract?

Assuming that the requirements of *Cain v Allen Electric & Equipment Co,* 346 Mich 568; 78 NW2d 296 (1956), to establish a contract were fulfilled and thus conceding that an implied contract existed, the inquiry arises, what were its terms? In *Cain, supra,* the Court addressed itself consistently throughout the opinion to the necessity of mutuality, *viz.,* "The cooperation desired was to be mutual" *(Cain* at p 579; 78 NW2d at 301). If such be a requirement the record hardly bespeaks any cooperation on the part of plaintiffs in this case. It was certainly the right of defendant to sell its division if it chose. It was as much the right of plaintiffs to oppose it. It was not their right as I understand

the applicable law to engage in a course of conduct that was clearly directed to undermining and defeating the company's attempt to sell the division. Thus to me, question two in my statement of issues could only be answered that if a contract were established it was plaintiffs who breached it and not the defendant.

I do not understand by what reasoning the trial court and my colleagues read into the supposed implied contract the requirement that "suitable" employment could not be with the purchaser just as well as with another division of defendant itself. This is the more true when all the terms of their former employment were included in their continued employment with the purchaser (save a bonus agreement). All of the foregoing does not even include the fact that plaintiffs, in fact, refused the offered employment voluntarily and automatically placed themselves beyond the terms of the supposed implied contract.

It is a fact of present day economic life that employees operating through a designated collective bargaining representative can and do hammer out tough terms of limitation on employers relating to sale or transfer of a location of any part of an employer's business. Limitations are imposed by Federal law on "runaway" plants. This is all to the good, and both parties know this when they face each other across the bargaining table. It is not the place of courts, however, as I see it, to incorporate these kinds of conditions into the relationship between a business and its salaried executive employees.

As far as I can see plaintiffs made out no case for establishing a contract with any ascertainable terms. If they did, the necessary terms thereof were breached by their own conduct. Hence I do

not reach the question of damages. Summary judgment for plaintiffs was improperly granted. If there still is summary judgment in Michigan it should have been granted to defendants.

I would remand to the trial court for entry of a judgment of no cause of action with costs to the defendant.