# MARTIN A. KAZIMIR, Plaintiff
## v.
# GENERAL ADJUSTMENT BUREAU, Defendant

Civil No. 68/81

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

January 8, 1982

TODD H. NEWMAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

JEFFREY S. GOLDMAN, ESQ., STEVEN L. GILLMAN, ESQ., Chicago, Illinois, U.S.A., *for defendant*

BRIAN L. MASONY, Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

Plaintiff was employed by defendant General Adjustment Bureau (hereinafter "GAB") on April 29, 1974, as an adjuster in their St. Croix office. In November 1980 Kazimir was laid off, allegedly due to a decline in the business handled by the branch. Plaintiff contends his discharge was wrongful because it was contrary to policy provisions of the company's personnel manual. GAB has countered this by asserting that the manual represented only a statement of policy and not a binding contract, or in the alternative that the situations addressed by the manual did not contemplate economic lay-offs, or that all obligations were fulfulled. Plaintiff filed suit in January 1981 and defendant has now moved for summary judgment.

■ In deciding motions for summary judgment the Court is governed by Rule 56(c) Fed. R. Civ. P., wherein judgment is rendered for the movant if there is "no genuine issue as to any material fact and [if] . . . the moving party is entitled to judgment as a matter of law." See Swettlen v. Wagoner Gas & Oil, Inc., 369 F.Supp. 893, 894 (W.D. Pa. 1974).

■ A threshold question presented in this case is what contractual effect, if any, the personnel manual has. The majority rule establishes that where an employee is hired at will, termination of employment may be exercised by either party, without reason, at will. Phillips v. Goodyear Tire & Rubber Co., No. 79-2011 at 9620 (5th Circuit July 27, 1981).[1] Phillips is not dispositive of the case at bar, however, since no personnel manual was there involved, and the Court did not decide what contractual effect, if any, a manual would have.

Some courts have held that policy guidelines, as detailed in a personnel manual, do not constitute an enforceable contract because the essential elements for the formation of a binding agreement are lacking. In Sargent v. Illinois Inst. of Technology, 397 N.E.2d 443 (Ill. App. Ct. 1979), the court considered a question similar to the one presented here. The claim was denied because the manual was not a bargained for exchange. "By agreeing to be bound by the guidelines, he [the plaintiff] has merely agreed to properly perform his required duties and nothing more. Plaintiff provided no additional consideration to support the predischarge hearing require-

---

[1] As the Court in Phillips points out, slip op. at 9621, a growing number of courts accept a "public policy" exception to this rule. That exception, however, is not applicable in this case.

ment and it did not become an enforceable contract." Id. at 446. Similarly, the Supreme Court of Kansas held in Johnson v. National Beef Packing Co., 551 P.2d 779 (Kan. 1976), that "nothing in the manual expressly provide[d] for a fixed term of employment, nor is there language from which a contract to that effect could be inferred." Id. at 782.

In Cederstrand v. Lutheran Brotherhood, 117 N.W.2d 213, 222–23 (Minn. 1962), the Court put the proposition thus:

> We have long recognized that an offer becomes binding in a unilateral contract when the consideration, the act of forbearance given in exchange, is performed. But what is given must be that which is asked.
>
> . . . .
>
> Here, there is no showing in the evidence that defendant, either through Ekern's speech or exhibit Y or by acts or conduct, manifested an intent to accept any act of forbearance as consideration sufficient to work its policy of no dismissal without cause into a contract.

Id. at 222–23.

Other states have found that personnel manuals, under the proper circumstances, do constitute enforceable agreements. Notably, Carter v. Kaskaskia Community Action Agency, 322 N.E.2d 574 (Ill. App. Ct. 1974), where the Court held "it appears that the plaintiff not only assented to a modification of his contract, but he provided sufficient consideration for that modification, thus creating mutuality of obligation." Id. at 577.[2] Cf. Gaydos v. White Motor Corp. (Mich. Ct. App. 1974), 220 N.W.2d 697, 700 (adoption of severance pay policy constituted offer of contract); Anthony v. Jersey Central Power & Light Co., 143 A.2d 762, 764 (N.J. Super. Ct. App. Div. 1958).

It is evident that the courts are divided on this question. "[T]here is abundant support for the proposition that employer policy directives regarding aspects of the employment relation become contractual obligations *when, with knowledge of their existence*, employees start or continue to work for their employer." Dahl v. Brunswick Corp., 356 A.2d 221, 224 (Md. 1976) (emphasis added).

This split of authority is not unexpected given that a determination of the issue turns on factual consideration as to whether there was an offer and acceptance, mutual assent, and consideration.

---

[2] Carter is cited for this proposition, notwithstanding the distinction drawn by the Illinois court in Sargent, supra.

Resolution of these questions can only be made after development of the facts at trial.[3]

Since there are "genuine issues of material fact" to be resolved, summary judgment may not be properly granted. Accordingly, the motion will be denied.

---

[3] The case of Dahl v. Brunswick Corp., supra, illustrates the crucial nature of the facts in this class of cases. When presented to the Maryland Court of Appeals in 1965 the court determined that policy statements of the Brunswick Corp. were unenforceable as a contract. MacIntosh v. Brunswick Corp., 215 A.2d 222, 225 (Md. 1965). The Michigan Court of Appeals found in Clarke v. Brunswick Corp., 211 N.W.2d 101, 103 (Mich. Ct. App. 1973), that by 1973 the company's "policy statement relating to severance pay had ripened into a contractual obligation of the company." Dahl, supra, at 224. The Maryland court in Dahl also concluded that the policy statements regarding severance pay were contractual and capable of being enforced.